Peelle, Ch. J.,
delivered the opinion of the court:
The claimants, by the terms of the contract set forth in the findings, agreed to furnish and deliver to the Quartermaster’s Department, United States Army, Philippine Islands, for the fiscal year ending June 30, 1905, 70,000 tons of Wallsend coal, from Australia in deliveries ex ship Manila Bay, at the rate of 8,000 tons per month, and at certain other places in said islands mentioned in the contract upon the 'giving of the notice therein required, all at the price of $5.15 per ton.
The claimants commenced delivery in August, 1904, and delivered to the satisfaction of the officers of the Government until January, 1905, when, by reason of a strike in the Newcastle collieries in Australia, the claimants were unable to supply said Wallsend coal. The chief quartermaster of the Division of the Philippine Islands, with whom the contract on behalf of the Government was made, was informed of the strike and of the claimants inability to deliver Wallsend coal by reason thereof. The claimants at the same time offered to furnish the Government an equal quantity of good Australian coal known as mountain coal, though inferior to the Wallsend coal, at the same price, and said quartermaster agreed to accept 6,000 tons thereof at $5.15 per ton, the purchase to be considered outside the contract to meet existing conditions.
Thereupon a cable message was sent by the agent of the claimants to their office in Sydney, New South Wales, Australia, directing the shipment of said quantity of mountain coal. After shipment, but before delivery had .been made, the quartermaster, upon the request of the claimants to be furnished with ah order for said coal in accordance with the verbal agreement so made, informed the claimants that a sample of said mountain coal would be shipped to the Quartermaster-General for test, and in case it fell below the Wallsend coal the difference would be charged against the claimants under *540 their contract, to which the claimants in writing protested as not in accordance with their verbal agreement.
Though the mountain coal was inferior to the Wallsend coal, it was reasonably worth at Manila at the time, owing in part to said strike, $5.15 per ton. A sample of said mountain coal was sent to the Quartermaster-General at Washington, but in the meantime the coal so ordered and 'delivered was accepted and paid for. Thereafter the coal so sent was tested and found to be of the value of $4.63 per ton, as compared with Wallsend coal, or $3,193.32 less than for the same tonnage of Wallsend coal.
The claimants thereafter entered into a second contract with said chief quartermaster to delivery 60,000 tons of West Wallsend coal for the fiscal year ending June 30, 1906, and in April following there was deducted from the amount then due the claimants for coal so delivered under said second contract the sum of $3,193.32, for the recovery of which the claimants now bring this action.
The claimants’ contention is that whether the purchase be regarded as a delivery under the contract or as an open market purchase, they are entitled to recover because of the verbal agreement and the acceptance of the coal and payment therefor at the price agreed upon; that thereby the transaction was settled and consummated, and thereafter the Government had no right to reopen the transaction and deduct the amount it did under the second contract without the claimants’ consent.
The claimants treat the purchase of the mountain coal as a slight departure from the written contract and as within the authority of the officer in charge of its execution. There is much force in the argument that though the contract may. not have conformed to the requirements of the law, still, since the coal was accepted and paid for at the rate agreed upon, the transaction was closed, and in support of this contention the claimants cite a number of authorities, but owing to the prior contractual relations between the parties concerning the same subject-matter we are unable to agree with counsel that the authorities cited by him apply in the present case. Here there was no conflict in the provisions of the contract requiring modification, nor did the quartermaster *541 in charge require the claimants to do or perform any act outside the terms of the contract, nor was it in any way the fault of the United States or any of its officers that the claimants were unable to perform their contract in delivering Wallsend coal. They had obligated themselves to deliver Wallsend coal in certain quantities, and their inability to do so was the result of a strike in the collieries in Australia from which said coal came. There is no provision in the contract, however, which exempts or excuses the claimants from the performance of their contract by reason of a strike. They were equally bound to deliver the coal contracted for after as well as before the strike and when, for their accommodation and convenience, the quartermaster agreed to accept a different and inferior quality of coal at the contract rate, though nothing was said at the time .about a sample being sent to the Quartermaster-General for test, still the oral contract, if contract it was, must be construed with reference to the terms of the written contract, Article XII of which provides:
“ XII. That in case of failure of the said parties of the second part to comply with the stipulations of this contract according to the true intent and meaning thereof, then the party of the first part shall have the power to purchase in open market at the lowest price obtainable, or by special contract, such quantity of coal of equal grade as may be required, not to exceed the amount herein stated, the difference in cost to be charged to and paid by the said parties of the second part, or their sureties.”
Under paragraph 4 of the contract all deliveries were to be subject to a careful inspection, while under paragraph 6 the claimants were required to file with the officer in charge of water transportation an official report of test showing quality of coal intended to be delivered, together with a sufficient sample for test, and if the coal offered for delivery fell below said report or the quality of the sample so submitted, same was to be rejected.
In view of the provisions of the contract and the legal limitations upon the quartermaster as the agent of the Government, of which the claimants were bound to take notice, we can not accept the oral agreement as modifying the written contract or definitely fixing the price of the moun *542 tain coal when it was at the time known to both parties to be inferior to the Wallsend coal. On the contrary, the oral agreement, whether the mountain coal was to be accepted under the contract or as an outside purchase, was subject to the provisions of the contract between the same parties. The amount of the deduction was ascertained as provided by the contract and, under the law, was a proper subject of set-off against any claim in favor of the claimant.
True, there is no fraud or bad faith charged in this case, but if the officers or agents of the Government can excuse a contractor from the performance of his contract by accepting an inferior quality of coal or other supplies than that contracted for and, too, at the contract rate, then contractors who may have underbid to secure a contract might thereby gain an advantage over other bidders to the detriment of the Government, especially where performance is prevented by some cause not covered by the contract. The question of hardship not provided against in the performance of a contract is not a question to be considered by the officer or agent, who has no authority to relieve therefrom or to compensate one on account of losses suffered by him in the fulfillment of his contract. He is the agent of the Government to see that the contract is carried out and has no authority to vary the same to meet conditions not therein provided against.
Without considering the case further, we think the opinion of the Judge-Advocate-General, as well as the opinion of the Comptroller, in rejecting the claim was correct, and the petition must, therefore, be dismissed, which is accordingly ordered.